## THE STATE *v.* MATHEW J. JONES.

The incompetency of one of the grand jurors by whom a bill of indictment has been found, is not cured by the omission to urge the objection on the first day of the term of the district courts in the country parishes. The 5th sec. of the stat. of 6 March, 1840, applies only to the formalities to be observed in the summoning, formation and drawing of the grand jury, and not to the want of qualification in any of its members.

The incompetency of any one member of a grand jury by whom an indictment has been found, will vitiate the whole proceeding, no matter how many unexceptionable jurors joined with him in finding it.

8r 616
48 601
8r 616
50 1105
8r 616
114 418
8r 616
118 804

APPEAL from the District Court of Rapides, *King*, J.

*Preston*, Attorney General, for the State, appellant.

*A. N.* and *O N. Ogden*, contra.

BOYLE, J. In this case, a motion was made in the lower court, by the counsel for the defendant, to quash the indictment preferred against him, on the following grounds, to wit:

1. Because twelve jurors did not concur in the finding of the indictment.

2. Because the indictment was not found by a competent grand jury, there being persons on the jury not qualified and competent, according to law.

The motion was sustained, and the indictment quashed; and from this judgment, the district attorney has taken an appeal to this court.

It satisfactorily appears, from the evidence taken on the trial of the motion, that Hadley P. Roberts, one of the members who sat on the grand jury, at the November term of the court, in 1844, when the bill of indictment was found, owned no taxable property in the years 1843 and 1844; that his name was not on the tax list of 1844, and although on that of 1843, that he had no property carried out on the list opposite to his name.

By the act of 25th March, 1831, the qualifications of a juror to serve in any of the courts of this State, are declared to be the following:

1. To be a free white male citizen of the State of Louisiana.

2. To be of full age and sound mind;

3. Not to be an apprentice, or an indented, or a domestic servant;

4. Not to have been adjudged guilty of any crime punishable according to the laws of this State, with death, or imprisonment at hard labor.

5. To have resided at least twelve months before a new *venire* is formed, in the parish or district in which the jury is summoned.

6. *To have paid, or to be liable to pay, a State, parish or city tax.*

In accordance with the provisions of the act of 6 March, 1840, the list of persons to serve as jurors in the several district courts of the State, must be drawn in every year; the list from which the *venire* of forty-eight to serve as grand and petit jurors, at the November term of the district court, for the parish of Rapides, in 1844, must, therefore, have been drawn within that year. Yet neither in that year, nor in the year previous, did the grand juror Roberts own any property, nor had he paid, nor was he liable to pay a State, parish or city tax. It is, however, urged, that the 5th section of this act destroys the effect of all objections of this character, unless made on the first day of the term of the dis-

trict court, to which the jurors are summoned, and not afterwards. The provisions of that section are confined " to any defect or informality which may have occurred, either in the formation, drawing or summoning of said juries, or any other defect whatsoever in the construction of said juries."

To give a different construction to this statute than that conveyed by its obvious language—to decide that no objection could be made to the competency of any individual summoned as a juror, to serve at each term of the district courts, unless upon the first day of the term, would be to deprive every person accused of a criminal offence of the right to challenge jurors for cause, a right which it is scarcely necessary to say may be exercised before the petit jurors are sworn in chief.

It only remains for this court to decide upon the legal effect of the objection taken to the want of competency in one of the members of the grand jury which found the bill. Twelve of that body, (usually numbering sixteen, as in the present instance,) may find a true bill, and it might be said, that although one of the sixteen should have been incompetent, the remaining fifteen or even twelve of them, would be sufficient to legalize the finding.

The wise policy of the law, however, which forbids any grand juror to disclose the secrets of his fellows or his own, leaves to the court which presides over their deliberations, no means of distinguishing who of the grand jurors have found, or who ignored the bill, and no means of ascertaining whether the bill has been found by the legal number of competent grand jurors, unless the whole body should be composed of such persons.

The common law of England, which governs our methods of trial, and all our proceedings in the prosecution of crimes, furnishes us with safe precedents in all matters connected with the inquest before the grand, and the trial before the petit jury.

The statute of the 2d Henry IV. c. 9, which is declaratory of the common law, and on the same subject as our act of 25 March, 1831, uses the following expressive language: " That from henceforth no indictment be made by any such persons, but by enquests of the King's lawful liege people, in the manner as was used by his noble progenitors, returned by the sheriff, &c., and other officers to whom it pertaineth to make the same, according to the law of England; and if any indictment be made hereafter, in any point to the contrary, that the same indictment be also void, revoked, and forever holden for none."

We find from Hawkins' Pleas of the Crown, book 2d, chap. 25, sects. 26, 27, 28, that in the construction of this statute, the following points have been decided:

" That a person arraigned upon any indictment taken, con-

The State v. Jones.

trary to the purview of this statute, may plead such matter in avoidance of the indictment.

"That a person outlawed upon any such indictment without a trial, may show, in avoidance of the outlawry, that the indictment was taken contrary to the form of the statute.

"That if any one of the grand jury, who find an indictment, be within any one of the exceptions of the statute, he vitiates the whole, though never so many unexceptionable persons joined with him in finding it."

We feel satisfied that the language of the statute of Henry, and the construction given to it by the English courts, furnish the wisest and safest rule of decision; and that the incompetency of one of the grand jury so to find a bill of indictment, vitiates the whole proceeding.

We therefore think, that the objection to the competency of one of the grand jurors in the case before the court, was well taken, and that the judgment of the district judge, in quashing the indictment, was correct.

*Judgment affirmed.*