147 So. 62

**STATE v. PATTERSON.**

No. 31928.

Oct. 31, 1932.

On Rehearing Feb. 27, 1933.

Rehearing Denied March 27, 1933.

Hawkins & Pickrel, of Lake Charles, for appellant.

Gaston L. Porterie, Atty. Gen., and James O'Connor, Asst. Atty. Gen. (John J. Robira, Dist. Atty., and Sam H. Jones, Asst. Dist. Atty., both of Lake Charles, and James O'Niell, Sp. Asst. to Atty. Gen., of counsel), for the State.

BRUNOT, Justice.

The defendant was charged, arraigned, tried, and convicted of the crime of carnal knowledge. He was sentenced to an indeterminate term, at hard labor, in the Louisiana State Penitentiary for not less than two nor more than three years, and he appealed.

There are five bills of exceptions in the record. We have carefully considered all of them. We find no merit in bills Nos. 1, 2, 3, and 4, but will briefly direct attention to the error in each one.

Bill No. 1 was reserved to the overruling of a motion for a continuance. The motion is based upon the absence of a witness for the defense upon whom no service was made because the witness was temporarily in the state of Texas. The record discloses

that a hearing was had on the motion pursuant to the provisions of article 323 of the Code of Criminal Procedure. At this hearing no evidence was offered to show that the facts the witness would testify to, if present, could not be proved by other witnesses in attendance upon the court. On the contrary, the defendant on cross-examination admitted that two other witnesses, present in court, could testify to the same facts. The judge in his per curiam says that, on the trial, four witnesses did actually so testify. Article 323 of the Code of Criminal Procedure was not complied with; neither was the jurisprudence prior to the adoption of the Criminal Code as it is announced in State v. Chevallier, 36 La. Ann. 81, State v. Hillstock, 45 La. Ann. 298, 12 So. 352, and State v. Carter, 51 La. Ann. 442, 25 So. 385.

■ Bill No. 2 was reserved to the overruling of defendant's verbal objection to going to trial because of the absence of one of his witnesses upon whom he had obtained personal service. No application for a continuance was made. The defendant merely objected to going to trial, and says in the bill:

"The Court, without any showing on the part of the State, or from any other source, ordered the defendant to trial without the presence of the witness."

The statement in the bill that no showing was made by the state is erroneous. The judge in his per curiam says:

"When the case was called, and this witness found to have been served and not present, I ascertained in open court from the officers that the witness was a fugitive from justice."

A mere verbal objection to going to trial presents nothing for review. Defendant should have made a formal application for a continuance in the manner and form prescribed by articles 321 and 322 of the Code of Criminal Procedure.

■ Bill No. 3 was reserved to the refusal of the court to permit the defendant to inquire into the chastity of the prosecuting witness at a time prior to the commission of the offense with which the accused was charged. Beginning on page 33 of the transcript the prosecuting witness being on cross-examination, we find the following:

"Q. I am going to ask you this question for the purpose of testing your credibility. Had you, prior to having intercourse with Harvey Patterson, had intercourse with any one? A. No.

"Q. Do you know James Franklin? A. Yes.

"Q. Do you know Earnest Teaster? A. Yes.

"Q. Have you ever had anything to do with him prior to that time? A. No sir.

"By the State: I object to this line of testimony as being irrelevant and immaterial.

"By the Court: The objection is sustained.

"By Mr. Pickrel: We except to the ruling of the Court and reserve a bill. I am asking these questions for the purpose of testing the witnesses' credibility."

The answers to the foregoing questions went to the jury without objection, and there was no request that the jury be instructed with respect to them. In the per curiam to this bill, the judge correctly says that the

testimony is not admissible for the purpose for which it was offered, viz., to test the credibility of the witness, and cites as authority for his view, State v. Johnson, 141 La. 775, 75 So. 678. He might have added State v. Hobgood, 46 La. Ann. 855, 15 So. 406; State v. Baudoin, 115 La. 837, 40 So. 239; State v. Romero, 117 La. 1003, 42 So. 482. "The relevancy of evidence must be determined by the purpose for which it is offered. * * *" Article 442, Code Cr. Proc.

■ Bill No. 4 was reserved to the refusal of the judge to permit the defendant, over the objection of the state, to ascertain from the prosecuting witness whether or not she had sexual relations with the defendant during the week following the commission of the offense with which the accused was charged. The court sustained the objection, and excluded the testimony upon the ground that it was irrelevant and immaterial. We see no error in the ruling. Coming events cast their shadows before, but after events cannot obliterate crime.

Bill No. 5. This bill was reserved to the court's permitting the district attorney, over the objection of the defendant, to read to the jury certain parts of the testimony previously given by the state witnesses in a civil suit. In the per curiam to this bill the judge says:

"The State offered all the evidence of the witnesses taken in a civil case, but I permitted him to introduce and read to the jury only those parts of the evidence in the civil case that were asked about by counsel for the defendant. * * *"

In this case the witnesses were present in court, they were examined in chief by the state, but were not re-examined upon the testimony they gave on cross-examination in response to questions propounded to them by the defendant's counsel. The common-law rule and our Constitution require that, in the trial of criminal cases, the defendant must be confronted with the witnesses against him, and the jurisprudence of every jurisdiction with which we are familiar requires that the testimony be given by the witnesses personally and orally before the tribunal that is to pronounce the verdict. When the second trial is for the same offense, and a witness who testified on the first trial is dead, insane, permanently absent from the state, or too sick to be brought to court at a subsequent time, the rule is relaxed. The rule is so well recognized that we abstain from quoting from any of the authorities, but will merely cite three of them, viz., Wharton's Crim. Ev. vol. 1, p. 406, par. 228; State v. Banks, 106 La. 480, 31 So. 53; State v. Britton, 131 La. 877, 60 So. 379. The overruling of the defendant's objection to the admission, as evidence in this case, of parts of the testimony previously given by the state's witnesses in a civil suit was contrary to law and prejudicial to the accused.

For the reasons stated, the verdict and sentence are avoided and set aside, and this case is remanded for trial according to law and the views herein expressed.

O'NIELL, C. J., concurs, except as to bill No. 1.

### On Rehearing.

OVERTON, Justice.

■ The rehearing in this case was granted because of our ruling on bill No. 5. We felt, in granting the rehearing, that the ruling

we then made was due to a misconception of the bill. Our further consideration of the bill leads us to the conclusion that we did misconceive it, and that this misconception led us into error. The bill, so far as pertinent to the question to be considered, reads as follows:

"Be it remembered, that on the trial of this cause, the district attorney asked that the testimony taken in the trial of an annulment suit filed by defendant in this case against the prosecuting witness be read to the jury.

"Defendant, through his counsel, objected to the reading of the testimony taken in the trial of the civil case for the reason that the testimony was immaterial and irrelevant hearsay and was not used to impeach any witness on the stand; could not be in rebuttal of anything that was introduced in this case and for the further reason that the court selected only the testimony of state witnesses which was given on the trial of the civil suit and the reading of the testimony could not act but to bolster the testimony of the same witnesses given on the trial of this case.

"Whereupon, the court overruled defendant's objection; selected certain parts of the testimony which had been given by the state witnesses on the trial of the civil case and permitted the clerk to read that testimony to the jury."

When the bill was tendered by the defendant's counsel to the assistant district attorney before its presentation to the judge for signature, the former wrote across it the

following, which, inasmuch as it was expressly approved by the trial judge, forms part of his per curiam, to wit:

"All the evidence actually permitted to be introduced was in direct rebuttal of defendant's attempt to show that the state witnesses had testified differently in the trial of the civil case for annulment, and was in explanation. Counsel for defendant openly charged on cross examination of the state witnesses that they were testifying differently in this case than they had in the civil case. The evidence in the civil case was, therefore, offered to show that this contention was not correct."

The trial judge, in a lengthy per curiam, says (so far as it is necessary to quote it to bring out the question before us) that:

"The statement of the assistant district attorney is correct.

"Harvey Patterson, (the accused), after marrying Mary Franklin, brought suit to annul the marriage. Mary and, perhaps, all the other witnesses who testified in this suit, civil suit, were witnesses in the criminal prosecution.

"When counsel for the defendant attacked the testimony of some of the state's witnesses, asking them if they had not testified differently in the civil suit, the state was allowed to introduce evidence of these same witnesses, given in the civil suit, but only on the points, on which counsel for defendant claimed their testimony differed.

"In questioning the state's witnesses, counsel for defendant would first examine the witness on a certain point, then ask if he

had not testified differently in the civil case, and in every instance he wound up by asking the witness if he did not say a certain thing in the civil suit, sometimes reading from the civil record.

"The state offered all the evidence of the witnesses taken in the civil case, but I permitted him to introduce and read to the jury only those parts of the evidence in the civil case that were asked about by counsel for defendant, which testimony of the state's witnesses in the criminal case was attacked."

It should be observed here that before the parts of the evidence in the civil case, which the trial judge deemed admissible, were permitted to be read to the jury, the correctness of the transcript of the evidence in the civil case, which included the parts offered, was established by the evidence of the court stenographer.

From the foregoing it appears that the question we are called upon to decide is whether or not it is permissible, where the defendant undertakes on cross-examination to discredit a witness for the state by questioning the witness as to his testimony, given in another case, or his failure to state a certain fact, and refers, it might be said, to the transcript of the evidence, sometimes reading from it, in so questioning the witness, for the state to offer in rebuttal of defendant's effort to discredit the witness all parts of the evidence relevant to the point of inquiry? In deciding this question, it may be said that the particular questions propounded by counsel for the defense and the answers thereto in the case on trial were not brought up, and therefore we must look to the per curiam of the trial judge to ascertain their nature and character.

It is manifest that defendant opened the door for the introduction, by the state, of the parts of the evidence bearing on the point of inquiry. It would seem reasonable that the state should have the right to offer in rebuttal of defendant's effort, for the purpose of explanation and of showing what its witnesses did testify to, those parts of their evidence relevant to the point inquired about by defendant, to the end that the jurors might have before them, in passing upon the credibility of the state's witnesses, not only what they testified to in the case on trial, but what they testified to in the civil case. Such a course would have the effect of placing the jurors in position to determine whether or not there were conflicts between the evidence of these witnesses, given on the trial of the civil case, and that given on the trial of the present case. Since the purpose of the parts of evidence offered by the state was not to show the guilt of the accused, but to place the jury in position to determine intelligently and in the best possible manner whether or not the conflicts contended for existed, in passing on the credibility of the witnesses attacked, the evidence did not violate section 9, article 1 of the Constitution of 1921, relative to the right of the accused to be confronted with the witnesses against him.

Whenever either party to a case, whether it be a civil or a criminal case, undertakes to impeach a witness of the opposite party by showing that he is testifying differently from what he testified to in a prior case, it is

proper for the party, whose witness is sought to be impeached, to offer so much of the evidence, taken in the prior suit, as is relevant to the point of inquiry, for the purpose of placing the witness in a proper light before the jury. This appears, it may be said, to be the rule in other jurisdictions, and it is the rule here. Thus in Huntley v. Territory, 7 Okl. 60, 54 P. 314, it is held, quoting from the syllabus, that:

"Where the defendant, for the purpose of impeaching a witness by showing contradictory testimony given by the witness upon a former trial of the case, offers in evidence extracts from the witness' former testimony, reading the same from the official transcript, it is not error for the court to permit the prosecution to read to the jury from said transcript all the testimony of said witness in relation to the facts involved in the alleged contradiction, for the purpose of rebutting such attempted impeachment."

A similar doctrine was held in Lowe v. State, 97 Ga. 792, 25 S. E. 676; Clymer v. Commonwealth (Ky.) 64 S. W. 409; State v. Fairlamb, 121 Mo. 137, 25 S. W. 895; Thornton v. State (Tex. Cr. App.) 65 S. W. 1105; Kemper v. State, 63 Tex. Cr. R. 1, 138 S. W. 1025; State v. Soileau, 173 La. 531, 138 So. 92.

There is no complaint evidenced by any bill of exceptions, that all of the relevant evidence on the point was not read to the jury. It is needless to say that the evidence offered was not hearsay, but was what the witnesses testified to in the civil suit. As to the remaining bills, there is no error in our original opinion.

Our original decree is set aside, and the judgment appealed from is now affirmed, reserving to defendant the right to apply for a rehearing.

BRUNOT, J., dissents.

ST. PAUL, J., absent on account of illness, takes no part.