SANDERS, Justice:
 

 This is a criminal prosecution for armed robbery. About 6:30 p. m. on December 21, 1968, two men entered ABC Rental System in New Orleans, ostensibly for the purpose of renting a color television set, but actually to plan a robbery. Galen Sickler, an employee, discussed rental terms with the two men, and they left. A short time later, the two men returned with a third man. One of them was armed. They forced Sickler and another employee to lie face down on the floor. The men then took a Magnum pistol and about $650.00 in cash.
 

 After the robbers had left, Sickler called the police and gave them a description of two of the men. A few weeks later, Freddie Munn was arrested, and he informed the police that Frank Polk, the present defendant, had taken part in the robbery with him and had the pistol taken from the Rental Company. Polk was later arrested and charged with armed robbery.
 

 Upon trial, the jury returned a verdict of guilty. The trial judge sentenced the defendant to a term of 20 years in Louisiana State Penitentiary. He has appealed, relying upon five bills of exceptions reserved in the trial court. These bills relate to the denial of a continuance, to the lineup identification of the defendant, to the denial of a directed verdict, to the scope of cross-examination, and to the length of the sentence
 

 BILL OF EXCEPTIONS NO. 1:
 
 Denial of a Continuance.
 

 The case was first assigned for trial on August 26, 1969. Over defense ob
 
 *743
 
 jection, the State was granted a continuance.
 

 The case was next assigned for trial on September 23, 1969. On the day of trial, defendant filed a written motion for continuance, alleging that three vital alibi witnesses failed to appear. The trial judge granted a continuance, and the case was reassigned for November 19, 1969.
 

 On November 19, defendant again filed a motion for a continuance, alleging that an alibi witness, Otis Harris, had moved his residence to Detroit and that the trial should be continued to December to give the witness time to return to New Orleans. The case was then reassigned for December 8.
 

 On December 8, defense counsel moved orally for another continuance, on the ground that Otis Harris had not yet returned from Detroit. The State opposed the motion, pointing out that the State had brought witnesses from other jurisdictions for the trial and that a continuance had already been granted to permit the attendance of Otis Harris. The trial judge denied the continuance, and the defendant reserved a bill of exceptions.
 

 A motion for continuance must be in writing. LSA-C.Cr.P. Art. 707. When based upon the absence of a witness, it must state the facts to which the witness is expected to testify, showing the materiality of the testimony and the necessity for the presence of the witness; the circumstances showing a probability that the witness will be available at a later date; and facts showing due diligence to procure attendance of the witness. LSA-C.Cr.P. Art. 709. Hence, the rejected motion does not comply with the basic requirements of the Louisiana Code of Criminal Procedure.
 

 Because the motion fails to meet the requirements of the Louisiana Code of Criminal Procedure, the trial judge properly rejected it. See State v. Lewis, 253 La. 230, 217 So.2d 381.
 

 Moreover, under Article 712, LSA-C.Cr.P., the granting of a continuance is within the discretion of the trial judge, and his denial of a continuance will not be disturbed on appeal in the absence of a clear showing of an abuse of discretion. See State v. Skinner, 251 La. 300, 204 So.2d 370; State v. Jackson, 250 La. 1100, 202 So.2d 264, State v. Freeman, 245 La. 665, 160 So.2d 571.
 

 In the present case, a continuance had been granted to procure the attendance of the absent witness. When the trial date arrived, however, defense counsel admitted to the court that he had not secured the witness’s Detroit address. Because of these circumstances, we find no abuse of discretion.
 

 We conclude the Bill of Exceptions lacks merit.
 

 
 *745
 
 BILL OF EXCEPTIONS NO. 2:
 

 (a) Sequestration of Witnesses.
 

 Prior to trial, defense counsel filed a written motion that the State’s witnesses be sequestered from the courtroom and not allowed to see the defendant before they were called to testify. The court granted the sequestration of the witnesses. On the morning of the trial, the witnesses reported to the courtroom in compliance with their summons. After the defense counsel arrived, he called the judges attention to the presence of the witnesses in the courtroom, stating that he assumed they would not be permitted to enter the courtroom before the trial began. The district attorney then pointed out that the names of witnesses had to be called, so that absent witnesses could be identified and attachments issued.
 

 Defense counsel then conceded that the witnesses presence in the courtroom was in good faith. He made no objection at the time and noted no bill of exceptions. Formal Bill of Exceptions No. 2, however, complains of the presence of the witnesses in the courtroom as a basis for reversal.
 

 Article 841 of the Louisiana Code of Criminal Procedure provides:
 

 “An irregularity or error in the proceedings cannot be availed of after verdict unless it is objected to at the time of its occurrence and a bill of exceptions is reserved to the adverse ruling of the court on such objection. Failure to reserve a bill of exceptions at the time of an adverse ruling of the court operates as a waiver of the objection and as an acquiescence in the irregularity or rulin. * * *"
 

 Since no objection was made at the time and no bill of exceptions noted, any objection based upon this incident was waived.
 

 (b) Suppression of Lineup Identification.
 

 Bill of Exceptions No. 2 also complains of the overruling of the defense motion to suppress the lineup identification of the defendant. The motion is founded upon two grounds: (1) the absence of legal representation at the lineup in violation of United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178, and (2) the lineup was conducted while defendant was unlawfully detained by an illegal arrest.
 

 Following his arrest, the police advised Polk of his rights, including the right to counsel at any lineup. He consented to take part in a lineup. Later the police read to him and he signed a written waiver of his right to counsel at the lineup. Although the defendant testified that he signed the waiver only because he was beaten by the police, this testimony is refuted by that of the police officers. The trial judge
 
 *747
 
 found from the evidence that the waiver of counsel was intelligently and voluntarily made. We affirm this factual finding.
 

 Finally, defendant assails the lineup identification on the ground that it was made following an illegal arrest.
 

 On the day of the crime, the robbery victims gave the police a description of two of the robbers. A few weeks later, the police arrested Fred Munn, one of the accomplices. Munn told the police that Frank Polk had participated in the robbery and had the Magnum pistol that was taken from the establishment. The police obtained a search warrant for Polk’s apartment. On January 20, 1969, they served the warrant at the apartment and arrested Polk. On January 22, the victims identified Polk in the lineup.
 

 A peace officer may arrest without a warrant when a felony has been committed and he has reasonable cause to believe the person to be arrested has committed the offense. LSA-C.Cr.P. Art. 213; State v. Thompson, 256 La. 1019, 240 So. 2d 899; State v. Pagnotta, 253 La. 770, 220 So.2d 69.
 

 At the time of arrest in the present case, the police had a description from the victim. They also had information from the accomplice identifying the defendant as a participant in the robbery and as the person having possession of the pistol taken in the robbery. Under the circumstances known to the police, they reasonably believed the identification to be correct. We conclude they had reasonable cause to arrest defendant. Hence, under Article 213, LSA-C.Cr.P., the arrest was legal.
 

 We conclude the Bill of Exceptions lacks merit.
 

 BILL OF EXCEPTIONS NO. 3:
 

 Overruling of the Motion for a Directed Verdict.
 

 After the State rested its case, defense counsel moved for a directed verdict of not guilty on the ground that the “State failed to show that the defendant was legally arrested * * * ” The defendant reserved a Bill of Exceptions to the overruling of the motion.
 

 The defendant apparently asserts that evidence of a valid arrest must be introduced at the trial before the jury, as an essential element of the Stage's case. Otherwise, it is postulated thát' a conviction cannot stand. In the presept case, it is conceded that evidence of the,,arrest was given outside the presence of the jury and, though objected to, in the State’s cross-examination of a defense witness.
 

 We have serious doubts that the motion for a directed verdict is the proper procedural vehicle to bring this question be
 
 *749
 
 fore the Court for review. Assuming, without deciding, that the question is properly before us, the defendant’s contentions lack merit.
 

 It is well established that the legality of defendant’s arrest is not essential to the validity of the indictment or to the Court’s jurisdiction to hear a criminal prosecution. State v. Simpson, 247 La. 883, 175 So.2d 255; State v. Green, 244 La. 80, 150 So.2d 571.
 

 In State v. Green, Supra, this Court stated:
 

 “Even if we should agree with the accused that the warrant of arrest issued on June 20 was illegal, this argument would be of no avail to him, for an unlawful arrest, of itself, is ‘ * * * no bar to a prosecution on a subsequent indictment or information, by which the court acquires jurisdiction over the person of the defendant’. 15 Am.Jur., Criminal Law, sec. 317, p. 15.
 

 “ ‘ * * * the illegal arrest of one charged with crime is no bar to his prosecution if all other elements necessary to give a court jurisdiction to try accused are present, a conviction in such a case being unaffected by such unlawful arrest. * * * ’ 22 C.J.S. Criminal Law § 144, at p. 383.
 

 “ ‘If a defendant is physically before the court upon a complaint or indictment, either because he is held in custody after an arrest or because he has appeared in person after giving bail, the invalidity of the original arrest is immaterial, .even though seasonably raised, as regards the jurisdiction of the court to proceed with the case. * * * ’ 4 Wharton’s Criminal Law and Procedure (1957), sec. 1484, p. 43 ”.
 

 The failure to prove a legal arrest before the jury in the present case is immaterial to guilt. Hence, this Bill of Exceptions lacks merit.
 

 BILL OF EXCEPTIONS NO. 4:
 

 Cross-examination of Defense Witness as to Arrest of Defendant.
 

 After the State had closed its case, the defense went forward with its evidence. The defense called Detective Walker of the New Orleans Police Department and questioned him concerning a photograph of one of the other robbery suspects. On cross-examination, over defense objection, the State was allowed to question him concerning the arrest of Defendant Polk. The witness testified that he arrested Polk after Fred Munn told the police that Polk was involved in a robbery with him and had the pistol taken in the ABC Rental robbery. The defense objection was that this testimony was new evidence, since no evidence of the arrest had been offered by the State in putting on its evidence in chief.
 

 
 *751
 
 The detective was called as a defense witness. The State had the right to cross-examine him. In Louisiana, the cross-examination of a witness is not limited to the matters covered on direct examination. LSA-R.S. 15 :280; State v. Williams, 250 La. 64, 193 So.2d 787; State v. Angelle, 217 La. 852, 47 So.2d 664.
 

 Moreover, even if the testimony is treated as additional evidence presented after the State rested its case, the Court had the discretion under LSA-C.Cr.P. Article 765, subparagraph 5, to permit its introduction.
 

 BILL OF EXCEPTIONS NO. 5.
 

 The Sentence.
 

 The sentence for armed robbery is imprisonment for not less than five years nor more than ninety-nine years, without benefit of parole, probation, or suspension of sentence. LSA-R.S. 14:64. The trial judge sentenced Frank Polk to a term of 20 years in Louisiana State Penitentiary.
 

 A few days later the defendant filed a motion requesting the trial judge to amend his sentence, asserting that Fred Munn, another participant in the robbery had pleaded guilty and received 10 years, despite the fact that the testimony shows that Munn was the one who carried the weapon into the establishment.
 

 Although we might postulate several reasons why Defendant Polk received a longer sentence than the other defendant, it is unnecessary for us to do so. The determination of the sentence is the prerogative of the trial judge. As long as the sentence falls within the limits authorized by the Louisiana Criminal Code, this Court has no authority to review it. See LSA-C. Cr.P. Art. 882; State v. Cook, 117 La. 114, 41 So. 434.
 

 In his attack upon the sentence, defendant relies upon North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). ’That decision is inapplicable to the present sentence. The Court’s holding there is that upon
 
 re-conviction
 
 of a defendant following the annulment of his previous conviction, a judge may not impose a more severe sentence unless he bases the increased sentence upon “objective information concerning identifiable conduct on the part of the defendant occurring after the. time of the original sentencing proceeding.”
 

 We conclude that the Bill of Exceptions lacks merit.
 

 For the reasons assigned, the conviction and sentence are affirmed.
 

 SUMMERS, J., concurs.